**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TREZJUAN THOMPSON, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
|     v. | : | |
| | : | NO.: 16-3287 |
| UNITED STATES, | : | |
|     Defendant. | : | |

**Jones, II      J.**                                                                 **July 12, 2017**

## MEMORANDUM

While incarcerated at a Philadelphia detention center, Plaintiff underwent surgery to repair a ruptured Achilles tendon. Thereafter, Plaintiff alleges that the prison staff provided him with such substandard care that Plaintiff developed recurrent, severe infections, which rendered Plaintiff disabled. Plaintiff brings the present action against the United States under the Federal Tort Claims Act, alleging Pennsylvania state law claims of negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress. Presently before the court is Defendant's Motion to Dismiss Plaintiff's claims for negligent and intentional infliction of emotional distress pursuant to Federal Rule of Civil Procedure 12(b)(6). Upon consideration of Defendant's Motion, all responses and replies thereto, and for the reasons that follow, Defendant's Motion is granted in part and denied in part. Plaintiff is granted leave to amend within fourteen (14) days.

## FACTUAL BACKGROUND

The following facts are recited in the light most favorable to Plaintiff. At all times material, Plaintiff Trezjuan Thompson was incarcerated in the Federal Detention Center in Philadelphia ("FDC"), a facility operated by the Federal Bureau of Prisons ("BOP"). (Compl., ¶

9). Plaintiff ruptured his right Achilles tendon while playing basketball on FDC grounds and was advised that the injury required surgery. (Compl., ¶ 11). About a month thereafter, Plaintiff underwent the recommended surgery at Hahnemann Hospital and Plaintiff's right leg was put in a cast to heal. (Compl., ¶ 12). Against medical advice, FDC corrections officers transported Plaintiff back to the FDC immediately following his surgery. (Compl., ¶ 15). Upon discharge, Plaintiff's surgeon instructed the corrections officers to bring Plaintiff back to the hospital for a follow-up evaluation in the next five to seven days. (Compl., ¶ 16). The doctor's orders concerning the follow-up visit were put in writing and sent to BOP staff, who forwarded the written instructions on to medical personnel in the FDC. (Compl., ¶ 17). The instructions further stated that if Plaintiff's cast got wet or began to leak, the cast would need to be removed and replaced. (Compl., ¶ 18).

FDC medical staff scheduled Plaintiff's follow up appointment for two weeks later. (Compl., ¶ 21).

One week following the surgery, Plaintiff informed FDC medical personnel that he "felt blood running out of his cast." (Compl., ¶ 19). Despite Plaintiff's complaints, no one at the FDC evaluated or treated Plaintiff's leg for the two weeks between Plaintiff's discharge from the hospital and Plaintiff's scheduled follow-up at Hahnemann Hospital. (Compl., ¶ 22). On the day of Plaintiff's follow-up appointment, a reported fire near the appointment site prevented Plaintiff from meeting with his surgeon. (Compl., ¶ 23-24). Plaintiff was returned to FDC without being evaluated. (Compl., ¶ 25). No one at the FDC made any immediate efforts to reschedule Plaintiff's follow-up appointment. (Compl., ¶ 26).

In the ten days following Plaintiff's missed appointment, Plaintiff repeatedly complained to FDC correctional and medical staff that he feared his wound was not healing, he was

experiencing substantial pain, and there was still blood leaking from his cast. (Compl., ¶ 27).

Plaintiff's complaints were ignored. (Compl., ¶ 28).

Plaintiff's follow-up appointment was re-scheduled for early October, a full three and one half weeks following Plaintiff's surgery. (Compl., ¶ 29). After removing Plaintiff's cast, the surgeon concluded that Plaintiff's surgical site was seriously infected. (Compl., ¶ 30). Plaintiff was readmitted to Hahnemann, where he underwent at least three debridement procedures intended to treat his infection. (Compl., ¶ 31-32). Hospital physicians determined that the first surgical repair of Plaintiff's Achilles tendon had failed as a result of the infection. (Compl., ¶ 33). Plaintiff had to undergo a second surgery to repair the tendon. (Compl., ¶ 34). Plaintiff remained in the hospital for several weeks, after which he was returned to the FDC. (Compl., ¶ 35-36).

In the following weeks, Plaintiff was readmitted to Hahnemann on at least two other occasions, where he was treated for persistent infection. (Compl., ¶ 39, 40-42).

Based on the foregoing, Plaintiff initiated suit under the Federal Tort Claims Act against Defendant United States for negligence, negligent infliction of emotional distress ("NIED"), and intentional infliction of emotional distress ("IIED"). Defendant timely filed the present Motion to Dismiss, seeking dismissal of Plaintiff's claims for negligent infliction of emotional distress and intentional infliction of emotional distress. Presently before the court is Defendant's Motion, Plaintiff's Response in Opposition, and Defendant's Reply.

**STANDARD OF REVIEW**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation

marks omitted). After the Supreme Court's decision in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544, 555 (2007), it was established that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Ashcroft v. Iqbal,</u> 556 U.S. 662, 678 (2009). But rather, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 678 (citing <u>Twombly</u>, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> at 678; <u>accord</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

## DISCUSSION

The instant action arises under 28 U.S.C. §§ 1346(b), the Federal Tort Claims Act ("FTCA"). The FTCA provides a mechanism by which plaintiffs can bring claims against the United States based on the actions of Government employees wherever private citizens engaging in analogous behavior would be liable under state law. <u>CAN v. United States</u>, 535 F.3d 132, 138 (3d Cir. 2008). Under the FTCA federal district courts determine liability "in accordance with the law of the place where the act or omission occurred." <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, 700 (2004). Accordingly, in the case at bar, Pennsylvania law will apply to determine the sufficiency of the pleadings to state claims for intentional and negligent infliction of emotional distress.

## I.     Negligent Infliction of Emotional Distress

In Count II of the Complaint, Plaintiff alleges that the BOP and FDC's failure to provide Plaintiff with necessary medical care is actionable as negligent infliction of emotional distress ("NIED") under Pennsylvania law. (Compl. ¶ 53-55). To recover for NIED in Pennsylvania, a

plaintiff must first establish the traditional elements of a negligence claim and must also establish at least one of the following elements: "(1) that defendant had a contractual or fiduciary duty toward him, (2) that plaintiff suffered a physical impact, (3) that plaintiff was in a 'zone of danger' and at a risk of an immediate physical injury, or (4) that plaintiff had a contemporaneous perception of tortuous injury to a close relative." <u>Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force</u>, 745 A.2d 25, 27 (Pa. Super. Ct. 2000).

At the outset, Plaintiff's NIED claim is dismissed as a matter of law because Plaintiff fails to allege physical manifestations of any emotional distress he experienced. "The general rule of law in Pennsylvania has been that…a claimant may not recover damages for negligently inflicted emotional distress in the absence of a physical manifestation of the emotional distress allegedly suffered. <u>Houston v. Texaco, Inc.</u>, 538 A.2d 502, 504 (Pa. Super. Ct. 1988). Plaintiff's claim that he experienced "extreme emotional distress which manifests itself in physical symptoms, including extreme pain and discomfort" is insufficient, as it is unclear from the pleadings whether the "extreme pain and discomfort" are attendant results of the emotional trauma or the physical injury. <u>See</u> <u>McCarthy v. County of Bucks</u>, 2010 U.S. Dist. LEXIS 115586 *1, *27-*28 (E.D. Pa. October 28, 2010) (applying Pa law)("[Plaintiff] cannot state a negligent infliction of emotional distress claim because the physical injury did not result from the emotional distress…If [Plaintiff] sustained any physical injury caused by any defendant, it would have been from negligence in his medical treatment…."). Plaintiff fails to specifically identify even one physical manifestation of the emotional distress he alleges. <u>Compare</u> <u>Armstrong v. Paoli Mem'l Hosp.</u>, 633 A.2d 605, 609 (Pa. Super. Ct. 1993) (alleging incontinence, depression, nightmares, and insomnia as physical manifestations of the emotional distress experienced); <u>Crivellaro v. Pa. Power & Light Co.</u>, 491 A.2d 207, 210 (finding Plaintiff's allegations of

intense headaches, uncontrollable shaking, involuntary hyperventilation and shortness of breath, frequent nightmares, upset stomach, and incontinence sufficient to establish physical manifestation of emotional distress). Absent a showing that Plaintiff's emotional distress manifested physically, Plaintiff cannot establish liability for NIED. As it relates to Count II of the Complaint, Defendant's Motion to Dismiss is granted.

## II.      Intentional Infliction of Emotional Distress

To prevail on a claim of intentional infliction of emotional distress ("IIED"), "the plaintiff must prove that the defendant, by extreme and outrageous conduct, intentionally or recklessly caused the plaintiff severe emotional distress." Motheral v. Burkhart, 583 A.2d 1180, 1188 (Pa. Super. Ct. 1990). Defendant moves to dismiss Plaintiff's claim for IIED on two grounds. First, Defendant argues that an IIED claim cannot be based on a party's alleged negligence or failure to act. (Mot., 5). This argument is one of which the court can easily dispose, as numerous courts within this jurisdiction have found a defendant's alleged inaction to be sufficient to support a claim for IIED. See e.g., Pierce v. Penman, 515 A.2d 948 (Pa. Super. Ct. 1986) (finding IIED liability where the defendant physician refused for years to release a patient's files); Woolfolk v. Duncan, 872 F. Supp. 1381 (E.D. Pa. 1995) (applying Pa. law and finding the pleadings sufficient to establish IIED liability where the defendant physician failed to make any bona fide medical judgments about patient's condition because of the patient's HIV diagnosis); Hoffman v. Mem'l Osteopathic Hosp., 492 A.2d at 1382 (Pa. Super. Ct. 1985) (finding a sufficient factual basis for IIED liability where the defendant physician refused to assist a patient who had fallen to the floor and could not move for two hours). Second, Defendant argues that even if an IIED claim was cognizable on the basis of a defendant's omission, the facts as alleged here are not sufficiently extreme or outrageous to serve as the basis of IIED liability. (Mot. 5).

Conduct sufficient to support a claim of IIED is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Reedy v. Evanson, 615 F.3d 197, 231-232 (3d Cir. 2010)(citing Field v. Phila. Elec. Co., 565 A.3d 1170, 1184 (Pa. Super. Ct. 1989)). Assuming them true, the pleaded facts establish that the FDC and BOP personnel: (1) disregarded doctors' orders as it related to the care of Plaintiff's surgical site; (2) ignored, for several weeks, Plaintiff's complaints of pain and reports of symptoms indicating a need for medical attention; and (3) were lax in their efforts to get Plaintiff evaluated by physicians outside of the detention center. Prison staff removed Plaintiff from the hospital against medical advice. (Compl., ¶ 13-14). Prison staff ignored the directives of Plaintiff's discharge instructions. (Compl., ¶ 16, 18). And when Plaintiff reported extreme pain and the exact kind of symptoms of which the prison medical staff was warned, the prison failed to act. (Compl., ¶ 22, 26, 28). The prison's apparent disregard for Plaintiff's condition culminated in a significant infection for which Plaintiff required several additional surgical procedures to treat. (Compl., ¶ 30-44). These facts are sufficient to state a claim for IIED.

Defendant attempts to buoy its argument in favor of dismissal by comparing the instant case to several others that arguably involve more egregious conduct than what is alleged in the case at bar. (Reply, 3-6). But these comparisons only underscore the absence of a standardized mechanism for qualifying conduct as sufficiently extreme or outrageous. Ultimately, it is for this Court to assess the facts as pleaded here, and decide "in the first instance, whether [Defendant's] conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Motheral, 583 A.2d at 1188. This case may not involve allegations of discrimination, verbal abuse, or years of alleged misconduct, but this Court is satisfied that the facts as alleged could

reasonably support a finding of IIED liability for three reasons. First, there existed a special relationship, as Plaintiff's detention rendered Plaintiff uniquely dependent on BOP and FDC personnel to act in Plaintiff's best interests. See e.g., Miller v. Hoffman, 1999 U.S. Dist. LEXIS 9275 *1, *21 (E.D. Pa. June 21, 1999) ("The extreme and outrageous character of conduct may arise from an abuse by a person in a position of actual or apparent authority over another, or by one with the power to affect the other's interests."). Second, the directives of Plaintiff's surgeon could be reasonably regarded as alerting BOP and FDC prison staff to the risk their conduct posed to Plaintiff's wellbeing. See e.g., id. at *23 (citing the defendant's failure to implement the alternative medical care recommended by other physicians as a factor in the court's decision that the evidence was sufficient to prove IIED). And third, the prison's staff repeated indifference to Plaintiff's reported pain and exhibited symptoms could reasonably be interpreted as rising to a level of callousness intolerable in civilized society. See e.g., Hoffman, 492 A.2d at 1386 (affirming jury finding of IIED liability where the defendant doctor left a fallen patient on the floor unassisted for two hours despite pleas for aid). According Plaintiff all reasonable factual inferences and considered in context, this Court is unwilling to conclude that Plaintiff could not, as a matter of law, demonstrate that the BOP and FDC's conduct was sufficiently outrageous and extreme so as to support a finding of liability for IIED.

In its Reply, Defendant appears to also challenge the sufficiency of the pleadings to establish that Plaintiff experienced severe emotional distress as a result of Defendant's allegedly extreme and outrageous conduct. (Reply, 7). As a preliminary matter, this Court is not required to consider this argument, as Defendant failed to raise it in his opening brief. United States v. Hoffecker, 530 F.3d 137, 163 (3d Cir. 2008) (noting that a party's failure to raise argument in opening brief constitutes waiver thereof). But even if the argument were not waived, it would

fail. Plaintiff pleads that he suffered "severe emotional distress which manifests itself in physical symptoms," "emotional trauma," and "loss of the enjoyment of life." This Court is satisfied that at this early stage, such pleadings are sufficient to survive the instant Motion. <u>See</u>, <u>Rodriguez v. Smith</u>, 2005 U.S. Dist. LEXIS 12237 *1,*35 (E.D. Pa. June 21, 2005)("Furthermore, Plaintiff's allegations that he has suffered 'extreme anxiety and distress' as a result of the Medical Defendants' conduct sufficiently raises an inference of emotional distress.").

Plaintiff sufficiently pleads a cause of action for intentional infliction of emotional distress. As it relates to Count III of the Complaint, Defendant's Motion is denied.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the pleadings are sufficient to state a claim for Intentional Infliction of Emotional Distress but insufficient to state a claim for Negligent Infliction of Emotional Distress. Defendant's Motion to Dismiss is accordingly **GRANTED** as it relates to Count II of the Complaint, and **DENIED** as it relates to Count III of the Complaint. Plaintiff is granted leave to amend the Complaint within fourteen (14) days of the filing of this Memorandum.

A corresponding Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II

C. Darnell Jones, II    J.