## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| **TREZJUAN THOMPSON,** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 16-3287** |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

FILED

SEP 2 6 2017

KATE BARKMAN, Clerk
By _____ Dep. Clerk

## AMENDED COMPLAINT

### I. PRELIMINARY STATEMENT

1.      Plaintiff Trezjuan Thompson brings this claim in relation to the gross negligence of medical practitioners and other employees in the Federal Bureau of Prisons ("BOP") at the Federal Detention Center in Philadelphia who failed to ensure proper follow-up care for the surgical repair of Mr. Thompson's ruptured Achilles tendon. As a result, Mr. Thompson suffered from prolonged and invasive infections at the surgical site, which have severely limited his mobility and left him permanently disabled.

2.      Mr. Thompson brings this action against Defendant United States of America under the Federal Tort Claims Act seeking compensation for his past and future physical and emotional pain and suffering and future financial losses.

### II. JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this Complaint under 28 U.S.C. §§ 1331, 1346(b).

4.      On or about June 30, 2015, Mr. Thompson submitted a timely Administrative Tort Claim to the BOP. In correspondence dated December 30, 2015, the BOP denied the claim.

5.     Venue is proper in this District under 28 U.S.C. § 1402(b) as the actions at issue in this matter occurred principally in Philadelphia, Pennsylvania within the Eastern District of Pennsylvania.

### III.  PARTIES

6.     Plaintiff Trezjuan Thompson was at all times relevant to this Complaint incarcerated in BOP facilities.

7.     Defendant United States of America is the appropriate defendant under the Federal Tort Claims Act.

8.     At all times relevant to this Complaint, all medical personnel mentioned below were employees of BOP and Defendant United States of America and were acting within the scope and course of their employment.

### IV.  FACTS

9.     In late July 2013, while he was incarcerated in the Federal Detention Center-Philadelphia ("FDC"), a facility operated by the Federal Bureau of Prisons ("BOP"), Mr. Thompson injured his right leg in a basketball game.

10.     In early August 2013, after imaging studies and an Emergency Department evaluation, Mr. Thompson was diagnosed with a ruptured right Achilles tendon.

11.     Mr. Thompson was evaluated by a physician at Hahnemann Hospital in Philadelphia who determined that surgical repair of the ruptured tendon was required.

12.     On September 10, 2013, Mr. Thompson had the recommended surgery. Following the procedure, a cast was placed on his right leg.

2

13.     The surgeon who conducted the procedure informed correctional staff who escorted Mr. Thompson to the hospital that Mr. Thompson should remain in the hospital overnight or longer for continued monitoring.

14.     The correctional staff, however, stated that Mr. Thompson was required to be immediately returned to the FDC.

15.     Mr. Thompson was, therefore, discharged that same day and returned to the FDC.

16.     The surgeon ordered that Mr. Thompson be returned to the hospital for a follow-up evaluation in five-to-seven days.

17.     Instructions concerning the need for a surgical follow-up evaluation were provided in writing to BOP staff who, in turn, provided those written instructions to medical staff at the FDC.

18.     The instructions provided, further, that if Mr. Thompson's cast got wet or started to leak, it should be removed and replaced.

19.     Approximately one week after the surgery, Mr. Thompson felt blood running out of his cast.  He reported this occurrence to FDC medical staff, including Stephen Hoey, D.O.; Antonio Fausto, MLP; Paul Clemens, PA-C; and Shelsy Bastedo, RN.

20.     Medical staff, including those referenced above, declined to evaluate or treat Mr. Thompson's leg.

21.     Mr. Thompson was scheduled for a post-surgical follow-up evaluation with the surgeon on September 24, 2013.

22.     At no time between Mr. Thompson's observation of blood running out of his cast and the scheduled follow-up appointment did FDC medical staff, including those referenced above, provide Mr. Thompson with evaluation or treatment of his surgical wound.

3

23.     On September 24, 2013, FDC correctional staff took Mr. Thompson to his follow-up appointment.  When they arrived at the location for the appointment, there was an apparent fire near the office building where the appointment was scheduled.

24.     Due to the apparent fire, BOP correctional staff did not take Mr. Thompson to the appointment.

25.     Instead, BOP correctional staff returned Mr. Thompson to the FDC.

26.     Following the decision not to take Mr. Thompson into the surgeon's office for the follow-up appointment, neither correctional staff nor medical staff made any effort to reschedule the appointment despite knowing that a follow-up appointment was necessary to evaluate the condition of Mr. Thompson's surgical wound.

27.     For the next ten days, Mr. Thompson complained to correctional and medical staff, including those referenced above, that his surgical wounds were not healing and that he was experiencing substantial pain and bleeding from the cast.

28.     During that time, FDC medical staff failed to provide Mr. Thompson with evaluation or treatment of his surgical wound

29.     A follow-up appointment was not rescheduled until October 4, 2013—three-and-half weeks after the surgery (and two-and-a-half weeks longer than the time period ordered by the surgeon).

30.     At the follow-up appointment, when the surgeon removed the cast from Mr. Thompson's leg, the surgeon concluded that Mr. Thompson's surgical wound was seriously infected.

31.     Mr. Thompson was readmitted to the hospital.

4

32.     Upon his admission, he was required to undergo at least three painful debridement procedures to treat the infection at the surgical site.

33.     Additionally, due to the infection, physicians concluded that the first surgical Achilles tendon repair had failed.

34.     As a result, Mr. Thompson was required to undergo a second surgical procedure to repair his Achilles tendon.

35.     Mr. Thompson remained hospitalized until November 22, 2013.

36.     On that date, he was returned to the FDC.

37.     Over the next week, however, Mr. Thompson experienced continued problems with infection at the surgical site.

38.     The continued infection resulted directly from the failure to timely treat Mr. Thompson's surgical wound in the weeks immediately following the surgical procedure.

39.     Mr. Thompson was readmitted to the hospital on or about November 29, 2013.

40.     For the next week, he received continued medical treatment for a persistent infection.

41.     He was discharged from the hospital on December 6, 2013.

42.     Yet again, the infection required additional treatment, and Mr. Thompson was returned to the hospital on or about December 10, 2013.

43.     He remained hospitalized for an additional two weeks, still receiving treatment for a persistent infection at the surgical site.

44.     The continued need for treatment was necessitated by the failure of FDC correctional and medical staff, including those referenced above, to ensure the timely treatment

5

of Mr. Thompson's surgical wound in the weeks immediately following the surgical procedure, which resulted in a persistent infection.

45.     As a result of the persistent infection, the multiple surgeries and debridements, and his continued inability to rehabilitate the injury, Mr. Thompson was rendered disabled.

46.     He experienced, and continues to experience, constant pain, discomfort, and limited mobility, requiring the use of a wheelchair or other assistive devices.

47.     Mr. Thompson additionally requires extensive treatment for recurrent infections.

48.     Mr. Thompson has suffered emotional trauma as a result of his mistreatment by BOP medical and correctional staff.  That emotional trauma has manifested itself in physical symptoms, including headaches, difficulty sleeping, nightmares, anxiety, and sweating.

49.     These harms to Mr. Thompson are a direct result of the failure of BOP medical and correctional staff to ensure the timely and appropriate treatment of Mr. Thompson following his surgery in September 2013.

50.     As a result of the actions and inactions of BOP employees as described above, Mr. Thompson has suffered substantial damages including physical pain and suffering, emotional trauma, loss of the enjoyment of life and financial damages, some or all of which may be permanent.

## V.  CAUSE OF ACTION

### Count I
### Plaintiff v. Defendant United States of America
### Federal Tort Claims Act – Negligence

51.     The BOP correctional and medical employees referenced above, including Stephen Hoey, D.O.; Antonio Fausto, MLP; Paul Clemens, PA-C; and Shelsy Bastedo, RN,

owed a duty to plaintiff, breached their duty to plaintiff, and, as such, were direct and proximate causes and substantial factors in bringing about plaintiff's damages outlined above.

52.   The actions and inactions of the BOP correctional and medical employees referenced above constitute the tort of negligence under the law of Pennsylvania.

53.   Under the Federal Tort Claims Act, defendant United States of America is liable for these actions.

## Count II
### Plaintiff v. Defendant United States of America
### Federal Tort Claims Act – Negligent Infliction of Emotional Distress

54.   The BOP correctional and medical employees referenced above, including Stephen Hoey, D.O.; Antonio Fausto, MLP; Paul Clemens, PA-C; and Shelsy Bastedo, RN, owed a duty to plaintiff, breached that duty, and caused plaintiff to suffer severe emotional distress, which has manifested itself in physical symptoms as described above, and which was the direct and proximate result of defendants' breach of duty.

55.   The actions and inactions of the BOP correctional and medical employees referenced above constitute the tort of negligent infliction of emotional distress under the laws of the Commonwealth of Pennsylvania.

56.   Under the Federal Tort Claims Act, defendant United States of America is liable for these actions.

## Count III
### Plaintiff v. Defendant United States of America
### Federal Tort Claims Act – Intentional Infliction of Emotional Distress

57.   The conduct of the BOP correctional and medical employees referenced above, including Stephen Hoey, D.O.; Antonio Fausto, MLP; Paul Clemens, PA-C; and Shelsy Bastedo, RN was outrageous and extreme. These employees acted intentionally or in deliberate disregard

7

of Mr. Thompson's emotional distress; and, as a direct and proximate result, he suffered severe emotional distress which manifests itself in physical symptoms, including extreme pain and discomfort.

58.     The actions and inactions of the BOP correctional and medical employees referenced above constitute the tort of intentional infliction of emotional distress under the laws of the Commonwealth of Pennsylvania.

59.     Under the Federal Tort Claims Act, Defendant United States of America is liable for these actions

**Wherefore**, plaintiff Trezjuan Thompson respectfully requests:

A.      Compensatory damages;

B.      Reasonable attorneys' fees and costs;

C.      Such other and further relief deemed just and appropriate.


/s/ Jonathan H. Feinberg
Jonathan H. Feinberg
I.D. No. 88227
KAIRYS, RUDOVSKY, MESSING, FEINBERG
  & LIN
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106
(215) 925-4400
(215) 925-5365 (fax)
jfeinberg@krlawphila.com