IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

—————————————————————
                                        :
TREZJUAN THOMPSON,                      :
                                        :
                    Plaintiff,          :          Civil Action
                                        :          No. 16-3287
v.                                      :
                                        :
UNITED STATES OF AMERICA,               :
                                        :
                    Defendant.          :
—————————————————————

## **ORDER**

AND NOW, this _____ day of _____, 2019, upon consideration of Jonathan H. Feinberg's Motion to Withdraw as Counsel for Plaintiff Trezjuan Thompson (Dkt. No. 54) and defendant's response thereto (Dkt. No. 55), it is ORDERED as follows:

(1)    the Motion is DENIED without prejudice to renewing the motion at a later time following the conclusion of the events below;

(2)    Plaintiff is ORDERED to appear by videoconference with his counsel to determine his intentions regarding his representation in this matter, at a time to be determined; and

(2)    this matter is REFERRED to the Court's designated magistrate judge, the Honorable Lynne A. Sitarski, for a conference to facilitate possible resolution of this matter.

IT IS SO ORDERED.

BY THE COURT:

_____
HONORABLE C. DARNELL JONES II
*Judge, United States District Court*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

|  |  |  |
|---|---|---|
| | : | |
| TREZJUAN THOMPSON, | : | |
| | : | |
| Plaintiff, | : | Civil Action |
| | : | No. 16-3287 |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Defendant. | : | |

_____

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO WITHDRAW AS COUNSEL**

Defendant the United States of America respectfully submits this response in
opposition to the motion to withdraw as counsel filed by Jonathan H. Feinberg,
Esq., counsel for plaintiff Trezjuan Thompson. *See* Mot. to Withdraw as Counsel,
Dkt. No. 54 (June 28, 2019).

The Court should deny the motion to withdraw as counsel, without prejudice,
because of the advanced stage of this litigation and the prejudice such withdrawal
would inflict on the parties and the administration of justice. This case has been
pending for over three years. Discovery is closed. Expert reports are due next week.
Mr. Feinberg, who has represented plaintiff since 2013, knows this case like no new
counsel could hope to, and serves an essential role not only representing his client,
but facilitating communications with the Court and ensuring the administration of
justice.

Shortly after filing his motion, plaintiff's counsel communicated to the United States that plaintiff may be reconsidering his decision to terminate his counsel. While communication with plaintiff is difficult and sometimes delayed given the circumstances of his incarceration, it appears as of the date of this filing that plaintiff has yet to make up his mind.

The United States therefore respectfully requests that the Court deny the motion without prejudice, and in the interim, order plaintiff to appear with his counsel by videoconference, *in camera* if appropriate, to conclusively determine plaintiff's intentions regarding his representation, and to ensure he understands the potential consequences of his actions.

The United States also moves to refer this matter to the Court's designated magistrate judge, the Hon. Lynne A. Sitarski, to see if this matter can be resolved without further imposition on the Court's and the parties' resources.

## BACKGROUND

Plaintiff is a high-security inmate currently incarcerated at United States Penitentiary ("USP") Pollock in Louisiana, where he is serving an over 27-year sentence following convictions in 2013 for arson and drug trafficking.[1]

In July 2013, while temporarily incarcerated at the Philadelphia Federal Detention Center ("FDC"), plaintiff ruptured his Achilles tendon playing basketball.

---

[1]   Days following his conviction, plaintiff assaulted a correctional officer. Plaintiff pled guilty to this charge in 2016, adding another 24 months to his sentence.

Am. Compl. ¶ 9. Dr. Howard Shapiro, a third party surgeon with no affiliation with the FDC, surgically repaired plaintiff's tendon on September 10, 2013. Although hospital discharge instructions indicated plaintiff was to follow up with his surgeon within five to seven days, plaintiff did not have his follow-up appointment with Dr. Shapiro until October 4, 2013, by which time his surgical wound was infected. Plaintiff has brought this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), alleging FDC medical staff negligently failed to return him to Dr. Shapiro for his follow up appointment in a timely fashion and failed to treat his surgical wound properly in the interim.

## I.     Plaintiff Engaged Mr. Feinberg to Represent Him Immediately.

Plaintiff engaged Mr. Feinberg within weeks of his October 4, 2013 follow-up appointment. Mr. Feinberg first contacted the FDC on plaintiff's behalf on November 8, 2013, shortly after which he visited plaintiff in person and obtained all of his medical records. *See* emails between J. Feinberg and FDC between November 8 and December 5, 2013, attached as Exhibit "A."

Mr. Feinberg represented plaintiff through the balance of his approximately six-month stay at FDC Philadelphia, including during the subsequent infections, hospitalizations, and treatments identified in his complaint. *See* Am. Compl., Dkt No. 32, at ¶ 35-47 (describing additional hospitalizations on November 29, 2013 and December 10, 2013). Mr. Feinberg submitted plaintiff's administrative claim to the Federal Bureau of Prisons ("BOP") in June 2015, and filed plaintiff's complaint in this action in June 2016. Dkt. No. 1. He has represented plaintiff through his

- 3 -

transfers from the FDC in Philadelphia to Federal Medical Center Devens (Massachusetts), USP Allenwood (Pennsylvania), USP McCreary (Kentucky), and his current location at USP Pollock.

## II.  The Parties Engaged in Extensive Discovery.

The parties engaged in extensive fact discovery, which is now closed. The United States produced more than 6,600 pages of records from the various BOP facilities at which plaintiff has been incarcerated, and obtained over 1,500 additional pages of records from other medical providers and entities. The parties exchanged and responded to interrogatories and document requests. The parties conducted 10 fact depositions, including of witnesses once affiliated with the FDC but, given the passage of time since plaintiff's alleged 2013 injuries, are now in such geographically remote locations as Salters, South Carolina, Coulee Dam, Washington, and, in plaintiff's case, Pollock, Louisiana.

### A.  Discovery confirmed plaintiff's history of rash decisions and conduct that is not in his best interest.

Medical records and Dr. Shapiro in his deposition testimony confirmed that the infection plaintiff was diagnosed with at his follow-up appointment was caused not by any delay in the appointment,[2] or by any bacteria that might be expected to

_____

[2] Dr. Shapiro confirmed that time does not cause infections, and that a delay in a follow-up appointment does not necessarily mean a surgical wound will become infected. *See* Deposition of Howard Shapiro, D.P.M., Tr. 92:17 to 93:2, attached as Exhibit "B." Furthermore, documents produced in discovery confirmed that FDC personnel initiated the process of approving plaintiff's follow-up appointment with Dr. Shapiro the day after his surgery and completed the authorization on

- 4 -

be found in a surgical wound (such as staph or skin flora). Instead, microbiology reports confirmed the bacteria found in his wound came from a water source, and plaintiff admitted getting his cast wet against doctor's orders. Microbiology reports further confirmed that after that initial infection was cleared, plaintiff sustained a subsequent infection in December 2013, a culture of which confirmed the presence of bacteria that originates in the mouth, leading plaintiff's physicians at Hahnemann University Hospital to conclude that plaintiff was contaminating his own surgical wound. Records from Dr. Shapiro, Hahnemann University Hospital, and FMC Devens independently document plaintiff's multiple refusals of care and actions against medical advice, exacerbating his injury and preventing his surgical wound from healing. *See, e.g.*, July 10, 2014 Response to Inmate Request by FMC Devens Health Services Administrator, attached as Exhibit "C."

Discovery closed on June 14, 2019.

## III.   The Parties Engaged in Settlement Discussions.

By agreement of the parties and by order of Court, the parties engaged in a settlement conference with Magistrate Judge Sitarski on March 26, 2019. Plaintiff was represented by counsel but did not participate from his location at USP Pollock. Plaintiff was nonetheless able to confer with Magistrate Judge Sitarski directly by

---

September 17, 2013. After that date, when plaintiff's follow-up appointment would occur was determined exclusively by Dr. Shapiro's office and a third party scheduling contractor, for whose actions the United States is not liable under the independent contractor exception to the FTCA. 28 U.S.C. § 2671.

phone on May 30, 2019. Dkt. No. 51. While the parties did not resolve the matter through this process, Magistrate Judge Sitarski was effective in bringing the parties' respective valuations of the case significantly closer together and keeping the discussions moving forward. Plaintiff made a revised settlement demand on June 17, 2019. Defendant made a counteroffer on June 20, 2019. Plaintiff's counsel filed his Motion to Withdraw eight days later.

**IV.     Discovery Is Closed and Expert Reports Are Due.**

Counsel filed his Motion to Withdraw on June 28, 2019, with discovery now closed, a settlement offer on the table, and less than three weeks before expert reports are due on July 19, 2019.

**V.      Communication with Plaintiff has Proven Difficult.**

Plaintiff is in a high security, geographically remote BOP facility that is over 1300 miles from the Court. The facility is often on "lock down," which interferes with inmates' ability to make and receive scheduled phone calls. Communicating with plaintiff has thus been an apparent challenge even for counsel as experienced with representing clients in the BOP system as Mr. Feinberg.

**VI.     Plaintiff May Be Reconsidering his Decision to Terminate his Counsel.**

Shortly after filing his motion, plaintiff's counsel communicated to the United States that plaintiff may be reconsidering his decision to terminate his counsel. As of the date of this filing, the United States has received no confirmation as to how plaintiff wishes to proceed.

**ARGUMENT**

The Court should deny the motion to withdraw at this time because the withdrawal of plaintiff's counsel would prejudice both parties and significantly hinder the adjudication of this case and the administration of justice.

Given what we understand may be ambivalence on plaintiff's part with respect to the important issue of his represenattion, the United States respectfully submits that (1) holding an in camera conference with plaintiff directly, (2) referring the matter back to Magistrate Judge Sitarski, and (3) denying (or refraining from ruling on) the motion to withdraw at least until such events occur will promote the fair and expeditious administration of justice.

**I.     The Court Possesses Wide Discretion to Deny a Motion to Withdraw.**

The Court's local rule provides that "[a]n attorney's appearance may not be withdrawn except by leave of court, unless another attorney of this court shall at the same time enter an appearance for the same party." E.D. Pa. Local R. Civ. P. 5.1(c). Under this local rule, "a law firm is entitled to withdraw once the firm demonstrates to the satisfaction of the district court that its appearance serves no meaningful purpose, particularly insofar as an opposing interest is concerned." *Ohntrup v. Makina ve Kimya Endustrisi Kurumu*, 760 F.3d 290, 294-95 n.2 (3d Cir. 2014) (citation and quotation marks omitted). The standard "clearly places the burden of persuasion on the law firm." *Buschmeier v. G&G Inv., Inc.*, 222 Fed. App'x 160, 166 (3d Cir. 2007) (Nygaard, J., dissenting).

- 7 -

The district court possesses wide discretion to decide a motion to withdraw as counsel because the inquiry is "context-laden," there is "no multi-factor test that a district court must apply," and the "interests to be considered will vary widely from case to case." *Ohntrup*, 760 F.3d at 295. But the "outer boundary" of that discretion is marked by "[t]he point at which the law firm no longer serves a meaningful purpose in the case . . . because withdrawal would be required at that point." *Id.*

"In assessing whether counsel's appearance no longer serves a meaningful purpose, courts should balance 'the burden imposed on the potentially withdrawing counsel if the status quo is maintained, the stage of the proceedings, and prejudice to other parties.'" *Totalfacility, Inc. v. Dabek*, No. 14-5324, 2016 U.S. Dist. LEXIS 179077, at *5-6 (E.D. Pa. Dec. 27, 2016) (Jones, J.), *citing Buschmeier*, 222 Fed. App'x at 164, *and Ohntrup*, 802 F.2d at 680 (in denying withdrawal, "the district court fairly balanced [moving counsel's] concerns with the court's need for effective communication and efficient administration" at the tail end of the proceedings).

## II.   Plaintiff's Counsel Serves a Meaningful Purpose at this Stage of the Litigation.

Withdrawal of plaintiff's counsel is not appropriate at this time. Counsel serves not only a meaningful purpose, but an essential one.

Briefing in this case spans several years. The parties spent over a year of time and effort engaging in fact discovery. As counsel notes in his motion, "[t]he parties have just completed extensive fact discovery and expert reports are due to

be disclosed on or before July 19, 2019." Mot., Dkt. No. 54, at 2. When discovery was substantially completed, the parties engaged in productive settlement discussions spanning several demands and counter-offers.

Plaintiff's counsel has zealously represented his client since the time the operative facts in this case were unfolding. Counsel is a respected advocate with significant experience representing – and, importantly here, navigating the logistics of communicating with – clients who are incarcerated in BOP facilities. The United States respectfully submits that plaintiff will find no substitute counsel who could represent him as ably and effectively as Mr. Feinberg. The United States further submits that Mr. Feinberg's withdrawal will significantly impair plaintiff's ability to communicate with the Court.

## III.   Withdrawal of Plaintiff's Counsel Would Prejudice All Parties and Impair the Administration of Justice.

Expert reports are due on July 19, 2019. Allowing plaintiff's counsel to withdraw would, at best, delay this process and at worst, jeopardize plaintiff's ability to secure the expert testimony that is necessary to support his claims of medical negligence.

The Court should not permit Plaintiff's counsel to withdraw at this important juncture. The United States recognizes the apparent challenges of representing a client who is far away, does not have consistent telephone or email access, and does not always follow the advice of professionals trying to take care of him. These apparent difficulties notwithstanding, in the interests of justice, plaintiff's counsel

should continue to represent him at least through a meeting with the Court and Magistrate Judge Sitarski because such meetings might obviate the need to extend this already protracted litigation further.

The cases counsel relies on in his motion only highlight how necessary his continued representation is here. In *Tyler v. US Airways, Inc.*, Civ. No. 13-5679, 2014 U.S. Dist. LEXIS 16868 (E.D. Pa. Feb. 10, 2014) (Mot. at 1, 3), counsel sought to withdraw as counsel for the plaintiff four months after the defendant answered the complaint, and when discovery was both early and ongoing. The Court in *Reigle v. Reish*, no. 11-cv-0052, 2013 U.S. Dist. LEXIS 119060 (Aug. 22, 2013) (Mot. at 1, 3), allowed counsel to withdraw where discovery was still ongoing and where the plaintiff, a prisoner at the inception of the litigation, had since been released, such that he was able to either secure new counsel or represent himself more ably. Here, in stark contrast, discovery is closed. The parties are on the brink of expert disclosures and dispositive motions. Plaintiff is in a remote BOP facility with limited communication capabilities, such that he is unlikely to be able to communicate effectively with any new counsel he might retain, or with the Court should he decide to represent himself.

Even if plaintiff were not having second thoughts about terminating his counsel (which defendant submits is reason enough to deny the motion), allowing counsel to withdraw at this juncture of the case would delay the resolution of this matter, prejudice both plaintiff's and the United States' interests, and unduly harm the administration of justice. *See, e.g., Totalfacility*, 2016 U.S. Dist. LEXIS 179077,

at *6-7 (denying motion to withdraw), *citing, inter alia, In re DVI, Inc. Sec. Litig.*,

Civ. No. 03-5336, 2014 U.S. Dist. LEXIS 152012, at *2 (E.D. Pa. Oct. 24, 2014)

(withdrawal denied, even though client owed substantial amounts of legal fees,

because filings were still pending and the court's ability to bring the case to

resolution efficiently would be affected); *Alzheimer's Inst. of Am., Inc. v. Avid*

*Radiopharmaceuticals*, No. 10-6908, 2011 U.S. Dist. LEXIS 140345, at *18 (E.D. Pa.

Dec. 7, 2011) (the Local Rules and Pennsylvania's Rules of Professional Conduct

permit the court to order counsel to remain in the case, despite apparent conflict, to

avoid further delays); *Stevenson v. Rosemont Coll. of the Holy Child Jesus*, No. 08-

cv-1833, 2008 U.S. Dist. LEXIS 103554, at *4 n.7 (E.D. Pa. Dec. 23, 2008) ("it would

be harmful to the administration of justice to allow counsel to withdraw" even

though counsel had lost all contact with client). *See also Brown v. Hyster Co.*, Civ.

No. 93-2942, 1994 U.S. Dist. LEXIS 3595 (E.D. Pa. Mar. 25, 1994) ("irreconcilable

difference" with client outweighed by prejudice to other litigants, delay in resolving

case and hindrance to administration of justice resulting from withdrawal); *Haines*

*v. Liggett Group, Inc.*, 814 F. Supp. 414, 423 (D.N.J. 1993) ("even if withdrawal is

otherwise appropriate, other considerations must sometimes take precedence, such

as maintaining fairness to litigants and preserving a court's resources and

efficiency," citing G. Hazard & W. Hodes, The Law of Lawyering, § 1.16:401 at 483

(1990)).

  Counsel's continued presence is necessary to help ensure an efficient and fair

resolution of this matter, whether by settlement or trial. These concerns take

precedence over the apparent differences in strategy that counsel cites in support of his motion.

## CONCLUSION

Plaintiff's decision to terminate his counsel at this eleventh hour – presuming he stands by that decision – stands to prejudice plaintiff's interests as well as those of the United States, and will hinder the administration of justice.

For these reasons, defendant respectfully requests that the Court deny Jonathan H. Feinberg, Esq.'s motion to withdraw as counsel, without prejudice to renewing the motion after (1) the Court has conferred with plaintiff directly regarding his intentions and (2) the parties have met again with Magistrate Judge Sitarski in an attempt to resolve this matter without further delay and burden on the parties and the Court.

Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

*/s/ Susan R. Becker for GBD*
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

*/s/ Lauren DeBruicker*
LAUREN DeBRUICKER
Assistant United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA   19106
Tel:   215-861-8492
Lauren.DeBruicker@usdoj.gov
*Counsel for Defendant*
Dated: July 15, 2019                     *United States of America*

# Exhibit "A"

## Marisa Nash - Re: Trezjuan Thompson, No. ███████

| | |
|---|---|
| **From:** | Marisa Davidson |
| **To:** | Feinberg, Jonathan |
| **Date:** | 11/25/2013 12:57 PM |
| **Subject:** | Re: Trezjuan Thompson, No. ███████ |

Yes.  If he was leaving this week it would have been today.


Marisa Davidson
Attorney
Federal Detention Center
700 Arch Street
Philadelphia, PA 19106
215.521.4058 tel
215.521.7220 fax
>>> Jonathan Feinberg <jfeinberg@krlawphila.com> 11/22/2013 5:27 PM >>>
OK, thanks.

I plan to visit with him on Tuesday, 11/25.

I know he is still subject to a writ in Maine.  Am I reasonably likely to catch up with him at the FDC on Tuesday?

*********************************************************
Jonathan H. Feinberg
Kairys, Rudovsky, Messing & Feinberg LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
Office: 215-925-4400
Cell: 215-284-3396
Fax: 215-925-5365

www.krlawphila.com



On Nov 22, 2013, at 3:18 PM, Marisa Davidson <mjdavidson@bop.gov> wrote:

   Hi Jon,

   You should have him sign another authorization so you can specify the records you want and the
   date range.  He is back at the institution as of this afternoon.

   Thank you,

   Marisa


   Marisa Davidson
   Attorney
   Federal Detention Center
   700 Arch Street

US04193

Philadelphia, PA 19106
215.521.4058 tel
215.521.7220 fax
>>> Jonathan Feinberg <jfeinberg@krlawphila.com> 11/20/2013 11:18 AM >>>
Marisa:

Thanks very much for assisting in arranging for Mr. Thompson to call me this morning. I
appreciate it very much.

One follow up question: does the authorization that he has given you permit the release of his
medical records to my office? If so, I would ask that all of his medical records from the FDC be
sent to me pursuant to the Freedom of Information Act. If not (and, likewise, if you need a
more formal written request), I will have him sign an authorization once he returns to the FDC,
which, as I understand it, should happen soon.

Thank you.

- Jon Feinberg

***********************************************************

Jonathan H. Feinberg
Kairys, Rudovsky, Messing & Feinberg LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
Office: 215-925-4400
Cell: 215-284-3396
Fax: 215-925-5365

www.krlawphila.com


On Nov 14, 2013, at 11:15 AM, Marisa Davidson <mjdavidson@bop.gov> wrote:

Jon,

Yes, we can set that up.  We will have a unit team member handle the call with
inmate Thompson.  What days are good for you? I believe he is still scheduled
for surgery on Monday so would make sense to do middle towards the end of the
week.

Marisa


Marisa Davidson
Attorney
Federal Detention Center
700 Arch Street
Philadelphia, PA 19106
215.521.4058 tel
215.521.7220 fax
>>> Jonathan Feinberg <jfeinberg@krlawphila.com> 11/14/2013 11:07 AM >>>
Marisa:

Thanks for taking the time to speak with me yesterday.

US04194

Mr. Thompson's family has asked that I arrange an attorney call. Could we try to set something up for next week?

Please let me know.

Thanks,

Jon

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Jonathan H. Feinberg
Kairys, Rudovsky, Messing & Feinberg LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
Office: 215-925-4400
Cell: 215-284-3396
Fax: 215-925-5365

www.krlawphila.com


On Nov 12, 2013, at 10:34 AM, Marisa Davidson <mjdavidson@bop.gov> wrote:

Jon,

Inmate Thompson recently signed a release of information allowing me to speak with you regarding his status at FDC Philadelphia.  I will try and reach you later this afternoon.

Thank you,

Marisa


Marisa Davidson
Attorney
Federal Detention Center
700 Arch Street
Philadelphia, PA 19106
215.521.4058 tel
215.521.7220 fax
>>> Jonathan Feinberg <jfeinberg@krlawphila.com> 11/8/2013 12:53 PM >>>
Dear Marissa:

I have been contacted by the family of the above-referenced inmate.  The family informs me that Mr. Thompson has been hospitalized at an outside facility and that they have been unable to learn of his location or speak with him.  I would request that you inform me as to how the family can be in touch with Mr. Thompson, and, further, how they can learn more about his medical status.  Alternatively, if there is a way for me to speak with and/or meet with Mr. Thompson, I would ask that you assist me in making such arrangements.

US04195

Thank you.

- Jon Feinberg
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Jonathan H. Feinberg
Kairys, Rudovsky, Messing & Feinberg LLP
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA  19106
Office: 215-925-4400
Cell: 215-284-3396
Fax: 215-925-5365

www.krlawphila.com

## Marisa Nash - Fwd: Trezjuan Thompson Record Request

| | |
|---|---|
| **From:** | Marisa Davidson |
| **To:** | Summers, Robin |
| **Date:** | 12/5/2013 10:44 AM |
| **Subject:** | Fwd: Trezjuan Thompson Record Request |
| **Attachments:** | Trezjuan Thompson Cert of Identity.pdf |

>>> Jonathan Feinberg <jfeinberg@krlawphila.com> 12/5/2013 10:23 AM >>>
Dear Marisa:

I have had Mr. Thompson sign a Certification of Identity, which I am attaching now.  Will this be sufficient authorization for the FDC to produce medical records for Mr. Thompson?

For now, I would request production of all medical records for Mr. Thompson's stay at FDC-Philadelphia.

Thanks,

Jon Feinberg

US04197

# Exhibit "B"

Thompson v. USA

IN THE UNITED STATES DISTRICT COURT
for the EASTERN DISTRICT of PENNSYLVANIA
CIVIL ACTION NO. 16-cv-3287


TREZJUAN THOMPSON
        Plaintiff
vs.
THE UNITED STATES OF AMERICA
        Defendant


THURSDAY, DECEMBER 20, 2018


        Oral deposition of HOWARD S. SHAPIRO, DPM
was taken at the offices of the U.S. Department of
Justice, United States Attorney's Office, 615
Chestnut Street, Suite 1250, Philadelphia,
Pennsylvania, before Susan L. Singlar, Professional
Court Reporter and Notary Public of the Commonwealth
of Pennsylvania, on the above date, commencing at
2:06 p.m.

Thompson v. USA

| Page 92 |
| --- |

1   BY MS. DeBRUICKER:
2       Q.      Right.
3       A.      I mean, I don't think it would -- I
4   mean, if it was being evaluated during these, say,
5   three weeks, I don't -- it would be my opinion that
6   it wouldn't get to where it is currently, or where it
7   was in 2013 when he first came in in, you know,
8   October 4th.  Either someone had his eyes on it, and
9   there's a little redness or a little drainage, you
10  know, action is going to, you know, be taken before
11  it gets much more severe.  So I don't think it would
12  have been like this, yeah.
13      Q.      So is it fair to say that there has to
14  be some sort of process going on to cause the kind of
15  infection that he had?
16      A.      Correct.
17      Q.      Time doesn't cause infection?
18      A.      Correct.  Right.
19      Q.      So I take it that if someone had been
20  -- if he had been seen sooner, something could have
21  been caught earlier in the process; is that fair to
22  say?
23      A.      That's correct.
24      Q.      But just because it's three weeks since
25  somebody has had their surgery doesn't necessarily

| Page 93 |
| --- |

1   mean they will be infected?
2       A.      That's correct.
3       Q.      For the sake of moving on, I think it's
4   your practice to -- following a procedure like this
5   to wrap him in sterile dressing again --
6       A.      Yes.
7       Q.      -- prior to the end of the procedure?
8       A.      Yeah.
9       Q.      So that it's a sterile process start to
10  finish?
11      A.      Correct.
12      Q.      Moving to Shapiro-19.
13      A.      19?
14      Q.      Yes.
15              Another Operative Report from a
16  procedure date of November 4?
17      A.      Yes.
18      Q.      And this appears to be another
19  debridement procedure?
20      A.      That's correct.
21      Q.      And then, moving forward to Shapiro-22,
22  just take a look at this quickly and I will ask you
23  some questions about it.
24      A.      Yes.
25      Q.      Another Operative Report dated

| Page 94 |
| --- |

1   November 18, 2013?
2       A.      That's correct.
3       Q.      And this looks like it appears to be a
4   rerepair of the Achilles; is that fair to say?
5       A.      That's correct.
6       Q.      Do you recall performing this rerepair?
7       A.      I'm sorry.  Say that one more time.
8       Q.      Do you recall performing this surgery?
9       A.      I mean, I know I did it.  I don't
10  really recall that procedure, but yeah, I do.
11      Q.      And it looks like a cadaveric graft was
12  used this time under materials used?
13      A.      Correct.
14      Q.      And why was that necessary this time --
15      A.      Because --
16      Q.      -- where it wasn't before?
17      A.      -- there was such a big deficit, I
18  believe, of the tendon.  We debrided so much tendon.
19  There was such a gap between the actual, you know,
20  muscle of the proximal and distal ends.
21      Q.      In the indications for this procedure
22  section of the first page of that report --
23      A.      Yeah.
24      Q.      -- about mid-way through the first
25  paragraph:  At this time, the wound on the right

| Page 95 |
| --- |

1   posterior aspect of the leg was not infected.
2               Do you see that?
3       A.      I do, yes.
4       Q.      And that was a determination that you
5   made prior to the surgery; correct?
6       A.      Correct.
7       Q.      And if the wound had still been
8   infected, would you still perform the surgery?
9       A.      No.
10      Q.      Based on your note, do you have an
11  indication as to how this procedure went?
12      A.      I mean, there were no complications, so
13  I'm assuming everything went well.
14      Q.      A better question would be:  Did you
15  encounter any complications, as far as you can tell,
16  from this note?
17      A.      No.
18      Q.      Moving ahead to Shapiro-25, which is a
19  Discharge Summary.
20      A.      This is the Discharge Summary, yes.
21      Q.      Date of discharge 11/22/13.
22              Do you see that?
23      A.      That's correct.
24      Q.      So is it typical for you to write this
25  kind of note when a patient is discharged from the

26  (Pages 92 to 95)

# Exhibit "C"



**RESPONSE TO INMATE REQUEST TO STAFF MEMBER**

Medical Records Copy
FMC DEVENS
P.O. BOX 880
AYER, MA. 01432

THOMPSON, Trezjuan
Reg. No. ▊▊▊▊▊▊
N-B Unit

This is in response to your multiple complaints reported to the Health Services Administrator during mainline. Specifically, you are requesting a list compiling what has been done for you medically, and what your treatment plan is going forward.

A review of your medical records revealed the following information. You arrived at FMC Devens on January 9, 2014, for wound care of your chronic open wound. During your initial intake screening, your dressings were removed and your wound was cleaned and covered with sterile dressing. In addition, you were issued a non-weight bearing boot and a wheelchair. You were instructed to return to the clinic in the morning for an evaluation with your primary care physician (PCP). Furthermore, you were educated to remain non-weight bearing and to keep your wound clean and dry. The following day (1-10-14), you were evaluated by your PCP at which time your treatment plan was to continue daily dressing changes on your right leg wound, debridement of the wound and possible removal of your sutures. You were again instructed to keep your lower leg in the issued boot and to remain non-weight-bearing.

On January 14, 2014, you were evaluated by your PCP as a follow-up. At that time, your wound was examined and your sutures were removed. The wound was debrided of yellow necrotic tissue and it was re-dressed. In addition, on the same date, x-rays of your right leg and right foot were taken.

On January 27, 2014, a consultation was written for further evaluation with a plastic surgeon for possible surgical options and for closure/management. The consultation was approved and you were evaluated by a plastic surgeon on February 4, 2014, at UMass Memorial Medical Center (UMMC). The plastic surgeon noted that you may require free flap reconstruction and you were referred to another specialist for assessment and reconstruction of your wound. In addition, a CT angiography of your leg was recommended to assess the status of the posterior tibial vessels. The CT angiography was completed on March 3, 2014.

On March 6, 2014, you underwent surgical debridement at UMMC. You returned to the institution and were admitted to PA Unit for closer monitoring and wound care. Following the surgical debridement, it was recommended that a Negative Pressure Dressing (wound vac) be applied to your right ankle wound. On March 11, 2014, it was reported that you were yelling at the nurse to speak with your PCP. Your PCP came down to PA Unit to discuss your care and the importance of wearing the wound vac, however, you were belligerent and verbally aggressive during the conversation. It was expressed to you once again that the plastic surgeon recommended the wound vac, but, you continued to refuse the therapy.

On April 7, 2014, you returned to the plastic surgeon at UMMC for a follow-up appointment. The plastic surgeon was informed that you were noncompliant with the wound vac and non-weight bearing recommendations. The surgeon informed you that the wound would soon be ready for Xenograft application and would require wound vac application at the time of the graft.

US01242

You once again informed the surgeon that you refused treatment with would vac therapy. A follow- up was recommended in six weeks and directions were given for continued daily wound care.

On April 17, 2014, you had a discussion with your PCP regarding the application of the wound vac. You were agreeable at that time and the wound vac was applied. You were educated on the importance of keeping the wound vac connected at all times and to not disconnect it or tamper with the machine. However, over the following few weeks, it was noted by medical staff that you were seen outside of your room with the wound vac not plugged in. Each time, you were re-educated on the importance of the continued suction and the negative effects on your wound if the machine was disconnected for extended periods of time.

On May 7, 2014, your PCP again had a long, frank discussion with you regarding the conditions of your wound vac therapy. You were given explicit instructions to not touch your dressing or remove yourself from the wound vac. In addition, you were informed of the Clinical Director's instructions that you not be allowed to go to visiting. The purpose of these instructions/requirements being that you needed to be under negative pressure as much as possible otherwise the purpose of the therapy would be defeated. At that time, you decided to once again refuse the wound vac therapy. You verbalized your understanding of the risks and possible consequences and signed a Refusal of Treatment form.

On June 2, 2014, you returned to UMMC for your follow-up to discuss your treatment plan and options. The plastic surgeon and nurse practitioner had a long discussion with you regarding your treatment options and the importance of compliance with non-weight bearing and the wound vac therapy. The treatment plan going forward will be debridement and skin grafting. The appointments are pending scheduling with the plastic surgeon.

Since arriving at FMC Devens, you have been demanding, disrespectful, belligerent and insolent towards custody and medical staff members. Behaviors such as these can warrant disciplinary actions, and more importantly, makes it difficult for medical staff to effectively communicate your treatment plan and assess your conditions. In addition, your records indicate that you have been noncompliant with daily dressing changes, vital signs and wound vac therapy. You are encouraged to follow the recommendations of your primary care provider team and the plastic surgeon for the most beneficial outcome to your general health and wound care.

Edward Eichel, Health Services Administrator                          Date

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of July, 2019, I caused a true and correct copy of the foregoing Defendant's Opposition to the Motion to Withdraw as Counsel to be served by the Court's CM/ECF system upon the following:

Jonathan H. Feinberg, Esquire
Kairys, Rudovsky, Messing, Feinberg & Lin
The Cast Iron Building
718 Arch Street, Suite 501 South
Philadelphia, PA 19106

*/s/ Lauren DeBruicker*
LAUREN DeBRUICKER
Assistant United States Attorney